**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RASHEEN JOHNSON,** | : | Civil Action No. 1:08-CV-00999 |
| **Petitioner** | : | |
| v. | : | **(Chief Judge Kane)** |
| **TROY WILLIAMSON,** | : | |
| **Respondent** | : | |

**MEMORANDUM**

**I.     INTRODUCTION**

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Rasheen Johnson ("Johnson"), an inmate confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"). (Doc. No. 1.) Johnson alleges that his constitutional rights were violated in the context of a disciplinary proceeding. For the reasons that follow, the petition will be denied.

**II.    BACKGROUND**

In an April 13, 2005 incident report, Johnson was charged with extortion in violation of Section 204 of the Bureau of Prisons' ("BOP") disciplinary code. (Doc. No. 10-3 at 1-2.) The incidents, which occurred in November and December, 2004, while Johnson was incarcerated at the Federal Correctional Institution in Greenville, Illinois ("FCI-Greenville"), was described by the reporting officer as follows:

> On April 13, 2005, at approximately 0800 hours, it has been determined that on or about November 16, 2004, inmate Johnson, Rasheen #29040-044 approached inmate [victim][1] in housing unit H4B, and demanded he send two thousand one hundred

---

[1] The victim inmate's name has been redacted in the instant report. (See Doc. No. 10-3 at 1-2.)

> dollars to Post Office Box 2641, Saint Louis, Missouri, in the name of [Johnson's mother]. On or about December 9, 2004, you again demanded that [victim] send you one thousand six hundred dollars to the same Post Office Box, and to the same person. On or about December 11, 2004, you once again demanded that [victim] send you two thousand one hundred dollars to the Saint Louis Post Office Box, and again to [Johnson's mother]. You demanded these payments from [victim] and if he refused to send you the money, you threatened to do harm to his wife by sending your people to her residence.

(Id. at 1.) Johnson was provided with a copy of the incident report on April 13, 2005. Upon delivery and after being advised of his rights, Johnson denied the allegations, stating, "It's not true, we gamble and he owed me money, I didn't extort anyone. He has also sent other inmates money for debts from gambling and drugs. He owed me from gambling, didn't want to pay so he dropped a note on me in February so he wouldn't have to pay." (Id. at 2.) An investigation was conducted on the same day. (Id. at 1-2.) On April 15, 2005, the Unit Disciplinary Committee ("UDC") held a hearing to review the incident report. (Id.) Johnson again generally denied the allegations. (Id.) After reviewing the matter, the UDC referred it to the disciplinary hearing officer ("DHO") for a further hearing. (Id.)

A hearing was held on May 12, 2005, at which time Johnson indicated that he understood his rights. (Id. at 3, 8.) He waived his right to staff representation and made the following statement:

> A kite was written on me a week before I was locked up saying my life was in danger and I was extorting people. A week later, I was brought over here and placed under investigation for drug trafficking. I was placed in a dry cell. I gamble and I had a store on the compound. I didn't sell any drugs on this compound, nor did I extort anybody. He has sent more people money other than just me. [Victim] owes me money right now. He has bought stuff for other people at the Commissary that is not his property right now. . . . Why would I give him my mother's address if I was extorting him? Not all of the money order receipts are there. There is more to this than me extorting him.

(Id. at 3.) In addition, Johnson presented one inmate witness, who made the following statement:

> It's all over the compound that [victim] is trying to get him for extortion. I don't believe that at all. He had a habit, and he owed lots of guys money. They are saying he owed thousands of dollars. He was a fraud from day one. He used to fake his seizures. [Victim] was a compulsive liar. He borrowed $200 in groceries from a guy in another unit, and they are having to pay his debt now that he's gone.

(Id. at 4.)

The DHO also considered documentary evidence. Specifically, the DHO relied upon eight (8) photocopies of money orders sent from the victim to Johnson's mother. (See id. at 6.) In addition, a special investigative service officer prepared a report which summarized his interviews with the victim and another inmate detailing the allegations. (Id.)

The DHO issued a decision after the hearing in which he "chose to place more credibility in the statements of inmate [victim] and [victim's witness]. By making those statements that you placed their own safety in jeopardy and possibly the safety and well being of their families on the street. Whereas you and your witness would have everything to gain and nothing to lose by not telling the truth. When questioned, your witness would only state generalities that he had 'heard' on the compound." (Id. at 7.) Johnson was sanctioned with twenty-one (21) days of disciplinary segregation, disallowance of twenty-seven (27) days of good conduct time, and a disciplinary transfer was recommended. (Id. at 5.)

The DHO's decision was upheld on appeal. (Doc. No. 10-4 at 2, 4.) It was concluded that Johnson's due process rights were upheld during the disciplinary process, that the greater weight of the evidence supports the DHO's decision, and that the sanctions were commensurate to the severity level of the offense and in compliance with policy. (Id.)

Johnson has filed the present petition alleging the following eleven claims: (1) the charges were not thoroughly investigated, (2) he was not advised of his rights, (3) he did not

receive the incident report within 24 hours after the investigation, (4) he did not receive prompt written notice of the unit disciplinary committee's findings, (5) he did not receive an opportunity to call a relevant witness at the hearing, (6) he did not receive notice of the charges at least 24 hours in advance of the hearing, (7) he did not receive access to a witness and a confidential informant prior to the hearing, (8) he was denied a staff representative, (9) he lacked adequate time to prepare for the hearing, and (10) errors in the procedure were not corrected during administrative review, and (11) the greater weight of the evidence did not support the decision. (Doc. No. 1.)

### III. DISCUSSION

The BOP disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the high category offenses, the UDC refers the matter to a DHO for a hearing. 28 C.F.R. § 541.15. Because Johnson was charged with an offense in the high severity category, the matter was referred for a disciplinary hearing.

High Category offenses carry a possible sanction of loss of good conduct time credits,

*inter alia*. 28 C.F.R. § 541.13. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974).

Further, despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing habeas claims under § 2241. Speight v. Minor, 245 F. App'x 213, 215 (3d Cir. 2007); Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion promotes a number of goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62 (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). Courts, however, have excused exhaustion when it would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J., concurring) (exhaustion excused upon petitioner demonstrating futility); Lyons v. United States Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion excused when agency actions clearly and unambiguously violate statutory or constitutional rights).

In order for a federal prisoner to exhaust his administrative remedies, he must comply

with the prison grievance process set forth in the Code of Federal Regulations.  See 28 C.F.R. § 542.10-.23; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007).  An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief.  28 C.F.R. § 542.13(a).  If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined.  Id. at § 542.14(a).  If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP.  Id. at §§ 542.15(a) and 542.18.  No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office.  See Sharpe v. Costello, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

In the instant case, Respondent seeks dismissal of the petition in part on the grounds that Johnson failed to exhaust his administrative remedies with respect to the first ten claims.  Alternatively, Respondent maintains that Johnson was afforded due process during the course of his disciplinary proceeding.   Further, Respondent contends that Johnson's claim that there was insufficient evidence to support the DHO's decision must fail.

In support of the argument that Johnson has failed to exhaust administrative remedies, Respondent has submitted Johnson's administrative appeals to both the BOP's North Central Regional Office and the Central Office, along with the responses thereto.  This documentation reveals the following.  On May 29, 2005, Johnson filed an administrative appeal with the BOP's North Central Regional Office.  (Doc. No. 10-4 at 1.)  In that appeal, Johnson again denies the allegations and claims there was not sufficient evidence to support the DHO's finding that the other inmates' statements were more credible.  In response, the North Central Regional Office

rejected his appeal, finding that the "DHO did give more credibility to the other inmates' statement, but he also relied on other evidence which is reflected in the DHO Report. In addition, we find the DHO met the standards of fairness, impartiality, and burden of evidence on which to support his finding." (Id. at 2.)

Johnson filed an appeal with the BOP's Central Office, again disputing the DHO's credibility determination and claiming there was insufficient evidence to support the decision. (Id. at 3.) The Central Office rejected the appeal, concluding that the DHO's decision was based upon the greater weight of the evidence that he had detailed in his report. (Id. at 4.) The Central Office also stated, "We also find it reasonable for the DHO to have made this determination based on the reporting officer's statement, SIS investigation, and other supporting documentation. The DHO determined that you committed the above prohibited act and we concur the evidence supports the finding that you committed the prohibited act." (Id.)

Upon review, the Court finds that Johnson has not filed or attempted to file an administrative grievance regarding the instant due process claims numbered one through ten. The record contains no indication that any grievance relating to these due process claims was either filed or rejected by the BOP. The undisputed record clearly shows that Respondent has satisfied his burden of establishing that Johnson's present claims relating to the alleged denial of due process during his disciplinary proceedings were not administratively exhausted. Since Johnson has not adequately demonstrated any proper basis as to why he should be excused from the exhaustion requirement, denial of Johnson's due process claims numbered one through ten is appropriate.

Johnson, however, did preserve for habeas review his challenge to the sufficiency of

evidence relied upon by the DHO.  The DHO's decision is required to be supported by some evidence in the record.  See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings).  The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced.  See Hill, 472 U.S. at 455.  Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is any evidence in the record that supports the DHO's conclusion.  See id. at 455-56.

      Reviewing the evidence, as recited above, the Court finds that there was "some evidence" to support the DHO's decision.  The statements of the reporting officer and the victim juxtaposed with the self-serving statements of Johnson and his witness, and the photocopies of the money orders indicating the exchange of money, confirm that the DHO acted with a sound evidentiary basis.  Id. at 455-56.  Thus, the petition will be denied with respect to Johnson's claim that there was insufficient evidence to support the DHO's decision.

      An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RASHEEN JOHNSON,** | : | Civil Action No. 1:08-CV-00999 |
| Petitioner | : | |
| v. | : | **(Chief Judge Kane)** |
| **TROY WILLIAMSON,** | : | |
| Respondent | : | |

## ORDER

**AND NOW**, this 20th day of November, 2008, upon consideration of the petition for writ of habeas corpus (Doc. No. 1), and for the reasons set forth in the accompanying memorandum,

**IT IS HEREBY ORDERED THAT:**

1. Petitioner's claims 1 through 10 are **DENIED** without prejudice for failure to exhaust available administrative remedies.

2. Petitioner's remaining claim relating to sufficiency of the evidence is **DENIED** with prejudice.

3. The Clerk of Court is directed to **CLOSE** this case.

S/ Yvette Kane
Yvette Kane, Chief Judge
Middle District of Pennsylvania